UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TONA SOUTHARDS-NARANJO, *et al.* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:25-cv-990 |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| CRIMINAL JUSTICE, *et al.*, | § | |
| *Defendants.* | § | |

**DEFENDANTS' MOTION FOR PROECTIVE ORDER LIMITING DISCOVERY**

Defendants Texas Department of Criminal Justice ("TDCJ"), University of Texas Medical Branch ("UTMB"), Texas Board of Criminal Justice ("TBCJ"), Bryan Collier ("Collier"), Lannette Linthicum ("Linthicum"), Michael Britt ("Britt"), Audrey England ("England"), Donald Muniz ("Muniz"), Daniel Dickerson ("Dickerson"), Jerry Sanchez ("Sanchez"), Owen Murray ("Murray"), Austine Aigbokhan ("Aigbokhan"), Mahaghony Walker ("Walker"), and Gene Miller ("Miller") (collectively, "Defendants") file this motion for protective order limiting discovery pursuant to Federal Rule of Civil Procedure 26(c). In support of their motion, Defendants offer the following.

**I. STATEMENT OF THE CASE**

Plaintiffs are the purported heirs and representatives of four former inmates—Jon Southards, Elizabeth Hagerty, John Skinner, and John Castillo, (together, the "Decedents")—who died in TDCJ custody. Both individually and on the Decedents' behalf, Plaintiffs filed this lawsuit alleging that TDCJ, UTMB, TBCJ (together, the "Agency Defendants"), and eleven TDCJ and UTMB officials—Collier, Linthicum, Britt, England, Muniz, Dickerson, Sanchez, Murray, Aigbokhan, Walker, and Miller (together, the "Individual Defendants")—exposed the Decedents to excessive heat in prison, causing their deaths. D.E. 28 ("Compl."). Plaintiffs bring claims for damages under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). *Id.*

1

On October 6, 2026, five days after filing their answer, Defendants served initial disclosures, attaching over 6,000 pages of relevant records, including the Decedents' medical and housing records. D.E. 31; Ex. 45.  Plaintiffs did not serve their initial disclosures until February 28, 2026, almost three months late.  Ex. 46.[1]  On the same day, Plaintiffs served a staggering onslaught of discovery requests on Defendants.  **In all, Plaintiffs served a staggering 2, 287 discovery requests:** 1,195 requests for production, 76 interrogatories, and 1,016 requests for admission (together, the "Requests").  Ex. 1-44.  These numbers do not take into account discrete subparts, which many of the Requests include. *Id.*  And, while there is significant overlap in the Requests between the 14 Defendants, **Plaintiffs served 356 individual requests for production on TDCJ *alone*.**  Ex. 1.

Despite the enormous burden, Defendants meticulously responded to each of Plaintiffs' Requests by the agreed-upon extended deadline of April 29, 2026.  Ex. 48-63.[2]  Along with their responses, Defendants produced approximately 20,000 additional pages of responsive documents, and they intend to produce even more documents on a rolling basis as they are discovered and reviewed. However, given the irreconcilable dispute between the Parties concerning the appropriate scope of discovery, Defendants seek Court intervention at the earliest stage possible.

The problem with Plaintiffs' Requests is not just the sheer number of them, although that itself smacks of bad faith.  Rather, the problem is that Plaintiffs' Requests seek documents and information with no possible relevance to the issues in this case, including documents and information regarding the allegedly heat-related deaths and injuries of other TDCJ inmates **going back to 1998**. *E.g.*, Ex. 1 (TDCJ RFPs) at #297-336; Ex. 16 (TDCJ interrogatories) at #1-3; Ex. 31 (TDCJ RFAs) at

---

[1] Counsel for the parties conducted a Rule 26(f) conference on November 17, 2025 and promptly submitted a proposed scheduling order.  *See* Ex. 47; D.E. 35.  Plaintiffs' initial disclosures were due on November 31, 2025, 14 days after Rule 26(f) conference.  Fed. R. Civ. P. 26(a)(1)(C).  Defendants point out the tardiness of Plaintiffs' disclosures not as grounds to strike, but rather as more evidence of Plaintiffs' disregard for the discovery rules.

[2] The only Defendant who has not yet responded is Linthicum, who is on extended medical leave. Plaintiffs have agreed to stay her response deadline until she returns to the office.

#47-78. Plaintiffs also seek, *inter alia*, all discovery previously produced or received in other heat-related lawsuits, including, inexplicably, the putative class action which their own counsel is currently prosecuting in this Court. *E.g.*, Ex. 1 (TDCJ RFPs) at #3-13; *Texas Citizens United for Rehabilitation of Errants, Inc. v. Lumpkin*, No. 1:23-cv-1004-RP (W.D. Tex., Austin Div.).

Plaintiffs' motive in serving over 2,000 discovery requests is unclear; it could be simply an attempt by to overwhelm Defendants' limited resources, or else an attempt by Plaintiff's counsel (as is their pattern) to conduct unauthorized research for use in other lawsuits. Whatever the motivation, though, Plaintiffs' abuse of the discovery process cannot be permitted to proceed, especially given that qualified immunity has been asserted. D.E. 31. Defendants therefore seek a protective order limiting discovery to Defendants' knowledge and conduct as it relates to Decedents and the circumstances of their deaths in 2023. While Defendants do not seek to define this category at too great a level of detail, they ask that it exclude, at the very least, discovery related to (1) injuries, deaths, conditions, or events at units other than where the Decedents died; (2) injuries, deaths, conditions, or events before 2021 or after the Decedents' deaths; and (3) other past or ongoing lawsuits.

## II.  STANDARD OF REVIEW

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c). Protective orders will be granted "for good cause [including to] protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998).

## III.  ARGUMENT

**A.**   **The assertion of qualified immunity requires limiting discovery to the Individual Defendants' knowledge and conduct as it relates to Decedents and their deaths.**

"Qualified immunity is an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). "[O]ne of the most important benefits of the qualified immunity

defense is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Asante-Chioke v. Dowdle*, 103 F.4th 1126, 1129 (5th Cir. 2024) (quotation omitted). Thus, once a defendant has asserted qualified immunity, discovery must be "narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507–08 (5th Cir. 1987)). A court's "failure to limit discovery [is] tantamount to the denial of qualified immunity." *Asante-Chioke* 103 F.4th at 1131.

In wrongful death cases against law enforcement officials, the Fifth Circuit has made clear that district courts must limit discovery to what is necessary to ascertain the officials' qualified immunity. *See, e.g., id.* at 1131-32 (remanding and directing the district court to limit discovery in officer shooting case to uncover only the facts necessary to rule on qualified immunity). And specifically where, as here, the case involves an inmate's allegedly heat-related death, the Fifth Circuit has held that discovery on qualified immunity is properly limited to "the personal knowledge and personal conduct of each Defendant as it relates to [the deceased inmate] and the circumstances leading to his death." *Hinojosa v. Livingston*, 807 F.3d 657, 672 (5th Cir. 2015).

For example, in *Webb v. Livingston*, the Eastern District limited discovery as follows:

> Plaintiff is entitled to obtain discovery limited to the personal knowledge and personal conduct of the Defendants as it relates to the [inmate's] case and the circumstances leading to his death at the Hodge Unit. That may include their knowledge of extreme temperatures at the Hodge Unit; the effect of psychotropic drugs on a prisoner's ability to regulate high temperatures, specifically, Mr. Webb's ability to do so; and what medical advice the Defendants received or gave regarding the Hodge Unit, Mr. Webb and management of extreme temperatures as it relates to this case. That may include discovery as to any policies or procedures in place (including TDCJ system-wide policies or procedures) to deal with the extreme high heat conditions at the Hodge Unit and whether those policies or procedures, if any, were followed in this case. The discovery shall be designed to uncover evidence that may be used to overcome (or to enforce) Defendants' defense of qualified immunity in the Webb case. **Although the Amended Complaint includes allegations of conditions throughout the TDCJ system and relates injury or death due to high heat in several other cases, this is not a class action nor have the cases been consolidated; the causes of action it propounds involve the death of Mr. Webb and the circumstances at the Hodge Unit, not the circumstances at other units.**

4

No. 6:13-CV-711, 2014 WL 1049983, at *9 (E.D. Tex. Mar. 17, 2014) (emphasis added).  Applying

this limitation, the court in *Webb* prohibited, among other things, "broad discovery related to TDCJ-

wide prison units" and "other heat-related cases filed in this and other federal districts in Texas."  *Id.*

at *9.  The Fifth Circuit affirmed, noting that "the district court's discovery order [was] narrowly

tailored to uncover only the facts necessary to rule on the immunity defense" because it "prevent[ed]

discovery that pertained to the merits of [plaintiffs] underlying claims and excluded discovery relevant

to other heat-related litigation."  618 F. Appx. 201, 201-11 (5th Cir. 2015).

This case should be no different.  Like the prison officials in *Webb*, the Individual Defendants

have asserted the defense of qualified immunity.  D.E. 31.  And like the prison officials in *Webb*, the

Individual Defendants have been served with broad sweeping discovery going well beyond what is

necessary to determine qualified immunity, including related to deaths and conditions at other prison

units and other heat litigation.  Ex. 1-44.[3]  Thus, like the Eastern District in *Webb*, this Court should

limit discovery to the Individual Defendants' personal knowledge and conduct as it relates to the

Decedents and the circumstances of their deaths in 2023.

**B.    Even setting the issue of qualified immunity aside, a protective order is required because Plaintiffs' Requests are overbroad and unduly burdensome.**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

claim or defense and proportional to the needs of the case, considering the importance of the issues

at stake in the action, the amount in controversy, the parties' relative access to relevant information,

the parties' resources, the importance of the discovery in resolving the issues, and whether the burden

or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 21(b)(1).  Moreover,

discovery requests cannot be "unreasonably cumulative or duplicative" or seek information or

---

[3] The discovery served on the Agency Defendants also infringes the Individual Defendants' qualified immunity because it implicates Plaintiffs' claims against them.  *See*, *e.g.*, *Carswell v. Camp*, 54 F.4th 307, 313 (5th Cir. 2022) (explaining how seeking discovery from non-immunity asserting defendants can still undermine the defense).

documents that are "obtain[able] from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). "The objective [of these rules] is to guard against redundant or disproportionate discovery" and "to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 Adv. Comm. Note.

Here, Plaintiffs' **2, 287** Requests constitute a flagrant abuse of the discovery process because they are wildly overbroad and responding to them as written would be unduly burdensome. Thus, even setting the issue of qualified immunity aside, Defendants are entitled to a protective order.

### a.    Plaintiffs' Requests are overly broad.

This case is not a class action, and Plaintiffs do not seek any injunctive or other broad sweeping relief. D.E. 28. Indeed, as the purported heirs and representatives of inmates who died in custody, Plaintiffs can *only* recover damages under the Texas Survival Statute or Texas Wrongful Death Statute, both of which require a causal connection between the violation and the Decedents' injuries or death. *See Montano v. Orange Cty., Tex.*, 842 F.3d 865, 879-80, 882 (5th Cir. 2016); *Slade v. City of Marshall*, 814 F.3d 263, 264 (5th Cir. 2016).; Tex. Civ. Prac. & Rem. Code §§ 71.002(b), 71.021(b).

Moreover, because Plaintiffs do not sue a municipality, they do not need to establish a "policy or custom" of persistent wrongdoing to establish a constitutional violation *See Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010). Rather, the relevant question in assessing Plaintiffs' Eighth Amendment claims is whether the Decedents were exposed to an extreme risk to their health or safety and, if so, whether any of the Individual Defendants were "deliberately indifferent" to that specific risk. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *Gates v. Cook*, 376 F.3d 323, 339 (2004). And with respect to Plaintiffs' ADA/RA claims, the relevant question is whether the Agency Defendants intentionally discriminated against the Decedents by failing reasonably accommodate their disabilities. *Windham v. Harris Cty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017); *Delano-Pyle v. Victoria County Texas*, 302 F.3d 567 (5th Cir. 2002) (holding that monetary damages under the ADA/RA requires intentionality).

Plaintiffs' **1,195** requests for production seek documents well beyond what could conceivably be relevant to this case. Ex. 1-15. While Defendants will not waste the Court's time reprinting the dozens of overly broad requests, some of the most egregious examples are worth highlighting:

- "All documents produced or received by Defendant in response to discovery in the matter of *Tiede, et al. v. Lumpkin* (formerly *Tiede v. Collier*), No. 1:23-cv-1004, in the United States District Court for the Western District of Texas." Ex. 1 at #12

- "All non-privileged documents retrieved, identified, or collected by Defendant pursuant to any discovery obligation in connection with [10 other heat-related lawsuits], whether or not they were produced to any party in that case." *Id.* at #13.

- "All documents concerning Jon Southards, segregated by date and time." *Id.* at #14.

- "All documents concerning Elizabeth Hagerty, segregated by date and time." *Id.* at #67.

- "All documents concerning John Skinner, segregated by date and time." *Id.* at #120.

- "All documents concerning John Manuel Castillo, Jr., segregated by date and time." *Id.* at #171.

- "All documents received by or sent by any individual Defendant concerning the death of **any** TDCJ inmate concerning heatstroke." *Id.* at #232 (emphasis added).

- "All documents received by or sent by any individual Defendant concerning the lack of air conditioning in any TDCJ facility." *Id.* at #235.

- "All documents concerning policy, procedure, or instructions governing **any aspect** of the Estelle, Lane Murray, Wainwright, or Hughes Unit concerning heat for the period 1998 to present." *Id.* at #241.

- "All documents concerning the cost of construction of the Estelle, Lane Murray, Wainwright, or Hughes Unit." *Id.* at #273.

- "All weekly summaries of incidents, illnesses, and/or work orders for the Estelle, Lane Murray, Wainwright, or Hughes Unit for the period January 1, 2013 to present." *Id.* at #281.

- "All documents reflecting the electrical capacity of the Estelle, Lane Murray, Wainwright, or Hughes Unit during the period January 1, 2013 to October 1, 2023." *Id.* at #268.

- "The Emergency Action Center file for each of the following deaths:
    a. Archie White, date of death: June 29, 1998
    b. Anselmo Lopez, date of death: July 14, 1998

c.  James Moore, date of death: July 30, 1998
d.  Charles Finke, Jr., date of death: August 8, 1999
e.  Gary Gemma, date of death: August 8, 1999
f.  Carl Green, date of death: August 18, 2000
g.  John Cardwell, date of death: August 4, 2001
h.  Darrell Wafer, date of death: May 19, 2003
i.  Ricky Robertson, date of death: July 16, 2004
j.  James Shriver, date of death: August 8, 2007
k.  Steven Yarbrough, date of death: August 9, 2007
l.  Dionicia Robles, date of death: August 13, 2007
m.  Jefferson Moore, date of death: May 26, 2008
n.  Nelva Harris, date of death: June 6, 2008
o.  Douglas Hudson, date of death: July 25, 2011
p.  Larry McCollum, date of death: July 28, 2011
q.  William Roberts, date of death: July 29, 2011
r.  Shearry Black, date of death: August 3, 2011
s.  Thomas Meyers, date of death: August 3, 2011
t.  Robert Webb, date of death: August 4, 2011
u.  Alexander Togonidze, date of death: August 8, 2011
v.  Charles Cook, date of death: August 8, 2011
w.  Michael Martone, date of death: August 8, 2011
x.  Kelly Marcus, date of death: August 12, 2011
y.  Kenneth Wayne James, date of death: August 13, 2011
z.  Daniel Alvarado, date of death: August 20, 2011
aa.  Rodney Adams, date of death: August 3, 2012
bb.  Albert Hinojosa, date of death: August 27, 2012
cc.  Darrell Boston, date of death: June 29, 2013
dd.  Curtis Garland, date of death: June 23, 2014
ee.  Dennis Heldt, date of death: September 19, 2014
ff.  Quintero Jones, date of death: July 31, 2015
gg.  Corey Smith, date of death: July 26, 2022
hh.  Patrick Womack, date of death: August 21, 2023
ii.  Armando Gonzales, date of death: August 23, 2023" *Id.* at #299.

Plaintiffs' interrogatories, while fewer in number, fare no better, seeking information about

inmate deaths and injuries **going back to 1998**. Ex. 16-30.  For example, Plaintiffs ask TDCJ to:

> Please identify all injuries resulting in emergency medical treatment, a hospital visit, or death whose onset occurred at a TDCJ facility during the period April 15 through October 15 in the years 1998 to 2023 that you contend were caused, in whole or in part, by environmental heat or hyperthermia. Your response to this interrogatory should identify the full name of the person who suffered the injury; the employee or inmate number of the person; the date of onset of the injury; the TDCJ facility where the onset of injury occurred; the nature of the injury; whether the injury resulted in

8

emergency medical treatment, a hospital visit, or death; and any reasons you contend the injury was caused, in whole or in part, by environmental heat or hyperthermia.

Ex. 16 at #2. The same goes for Plaintiffs' **1,016** requests for admission. Ex. 30-44. For example, Plaintiffs ask whether Defendants admit that "[if] Archie White, date of death: June 29, 1998, had been assigned to live in an airconditioned environment, then he most likely would not have died when he did." Ex. 31 at #47; *see also id.* at #48-79 (same with respect to other inmates).

Although courts have "broad discretion" in deciding discovery matters—*see Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011)—this is not even a close call. Under the proportionality requirements of Rule 26, many of Plaintiffs' Requests are plainly overbroad, both in terms of the topics and date ranges they cover. Plaintiffs' Requests related to prior and ongoing heat litigation would *alone* cover millions of documents, the vast majority of them have no relevance to this case.[4] *See Webb*, 2014 WL 1049983, at *9 (holding that records from other heat-related litigation was not discoverable). And while some discovery related to other potentially heat-related inmate deaths and injuries is arguably proper, proportionality requires that that discovery be limited to injuries and deaths at the units where the Decedents died, and only for the two years prior to their deaths. *See, e.g.*, *Rogge v. Bandera Falls Prop. Owner's Ass'n*, No. CV SA-07-CA-996-OLG, 2009 WL 10713559, at *2 (W.D. Tex. Aug. 11, 2009) ("[A] large portion of plaintiff's requests are over broad. This lawsuit was filed on June 5, 2007, based on actions purportedly commencing in 2005. Thus, it is unclear how documents from 2002 or 2003, and in some instances 2004, would be relevant."); *Ford v. Cain*, No. CV 15-136, 2016 WL 7471633, at *5 (M.D. La. Dec. 27, 2016) (holding that inmate could not request all grievances concerning inmate healthcare because his claim related solely to his own healthcare);

---

[4] For example, because the *Texas Citizens* case currently pending in this Court pertains to TDCJ's *current* ability to install air conditioning in Texas prisons and seeks only prospective injunctive relief, the documents produced in that case likely pertain mostly to deaths, injuries, conditions, and events *after* all of the Decedents died in 2023, none of which is relevant here. *See Texas Citizens United for Rehabilitation of Errants, Inc. v. Lumpkin*, No. 1:23-cv-01004 (W.D. Tex.).

*Cook v. City of Dallas*, No. 3:12-CV-3788, 2017 WL 9534098, at \*8 (N.D. Tex. Apr. 10, 2017) (limiting discovery in wrongful death case to potentially related prior acts during the prior two years).[5]

### b.    Plaintiffs' Requests are unduly burdensome.[6]

The final reason a protective order is necessary is because Plaintiffs' Requests impose a simply impossible burden on TDCJ, UTMB, and their employees.  As described in the attached declarations, responding to Plaintiffs' Requests without any limitations would require untold hours of labor hours from already overburdened state employees.  Ex. 64-68.  Without the limitations sought in this motion, Defendants and their counsel would be required to review and categorize millions of documents, scanning each for potential privilege and confidential information.  For example, TDCJ ran search terms to identify emails responsive to just 4 requests for production and uncovered **15-20 million results** (approximately 3.7 terabits).  Ex. 64.  UTMB ran a similar search and uncovered over 420,000 results.  Ex. 65.  And as another example, in order to respond to Plaintiffs' request for all heat-related inmate grievance records, TDCJ would have to review more than 540,000 grievances.  Ex. 67.

In all, UTMB calculated that it would take **1-2 million hours** to fully respond to all of Plaintiffs' Requests, and much of that review would need to be done by trained medical professionals at great expense.  Ex. 68.  Moreover, all time taken by medical staff to collect and review documents for this case would take them away from their existing duties of providing inmate medical care, causing a tremendous disruption and potentially risking health outcomes.  *Id.*

---

[5] Plaintiffs' **2,287** Requests are not just overly broad; they are also largely duplicative.  The most obvious examples are catch-all requests like "all documents concerning [the Decedents], segregated by date and time" (*e.g.* Ex. 1 at #14, 67, 120, 171), followed by dozens of more specific requests related to each Decedent which obviously fall within the catch-all requests (*e.g.* Ex. 1 at #15-66, 68-119, 121-170, 172-221).  There are other examples, too, such as two separate requests for all documents concerning "any decision to lower the temperature" and "any decision *not* to lower the temperature" within a given unit during the summer months. *E.g.*, Ex. 1 at #253-54.  Defendants do not seek to strike any particular requests on the grounds that they are duplicative, but identify this issue because it provides yet further evidence of Plaintiffs' bad faith.

[6] Providing individual written responses and objections to each of Plaintiffs' **2,287** Requests *itself* imposed an undue burden.  Defendants considered moving to strike Plaintiffs' Requests to avoid that burden, but ultimately decided to provide individual responses in an abundance of caution to avoid potential waiver of defenses.

A protective order is proper to "protect a party from . . . undue burden or expense." Fed. R. Civ. P. 26(c)(1). By any definition, the burden and expense required to respond to Plaintiffs' Requests is "undue" and a protective order is necessary. *See*, *e.g.*, *Fund Tex. Choice v. Deski*, No. 1:22-CV-859-RP, 2023 WL 8856052, at *15 (W.D. Tex. Dec. 21, 2023) (Pitman, J.) (finding unduly burdensome 1,691 discovery requests because responding to that many requests "would impose substantial costs on any party"); *Johnson v. Cnty. of Dallas*, No. CIV.A. 3:92-CV1121-P, 1997 WL 711448, at *1 (N.D. Tex. Nov. 12, 1997) (finding unduly burdensome request for four years' worth of inmate grievances); *Grant v. Lafourche Par.*, No. CV 21-1782, 2022 WL 4104546, at *1 (E.D. La. Sept. 8, 2022) (finding unduly burdensome request for records of other inmates' sick calls and grievances); *Lafleur v. Leglue*, No. CV 16-254-BAJ-RLB, 2018 WL 3420808, at *3 (M.D. La. July 13, 2018) (finding unduly burdensome request for four years' worth of use of force records).

## IV.    CONCLUSION

For the foregoing reasons, the Court should enter a protective order limiting discovery to Defendants' knowledge and conduct as it relates to Decedents and the circumstances of their deaths.

Respectfully submitted,

| | |
|---|---|
| **KEN PAXTON** | */s/ Michael J. Calb* |
| Attorney General of Teas | **MICHAEL J. CALB** |
| | Assistant Attorney General |
| **BRENT WEBSTER** | Attorney-In-Charge |
| First Assistant Attorney General | Texas State Bar No. 24126986 |
| | Michael.Calb@oag.texas.gov |
| **RALPH MOLINA** | |
| Deputy First Assistant Attorney General | Law Enforcement Defense Division |
| | Office of the Attorney General |
| **AUSTIN KINGHORN** | P.O. Box 12548 |
| Deputy Attorney General for Civil Litigation | Austin, Texas 78711-2548 |
| | (512) 463-2080 |
| **BRIANA M. WEBB** | |
| Chief, Law Enforcement Defense Division | **COUNSEL FOR DEFENDANTS** |

11

## CERTIFICATE OF SERVICE

I, Michael J. Calb, Assistant Attorney General, affirm that on May 6, 2026 a true copy of the foregoing has been served on all counsel of record via the Court's electronic filing system.

/s/ *Michael J.Calb*
**MICHAEL J. CALB**
Assistant Attorney General

## CERTIFICATE OF CONFERENCE

I, Michael J. Calb, Assistant Attorney General of Texas, certify that on March 22, 2026 I conferred with counsel for Plaintiffs in this matter, who informed me that Plaintiffs are opposed to the relief sought herein. Specifically, Mr. James informed me that he believes all of the propounded discovery is relevant to Defendants' knowledge of the conditions which led to the Decedents' death. .

/s/ *Michael J.Calb*
**MICHAEL J. CALB**
Assistant Attorney General

12