**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **TONA SOUTHARDS-NARANJO,** *et al.* | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:25-cv-990** |
| | § | |
| **TEXAS DEPARTMENT OF** | § | |
| **CRIMINAL JUSTICE,** *et al.*, | § | |
| *Defendants*. | § | |

---

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

Defendants Texas Department of Criminal Justice ("TDCJ"), University of Texas Medical Branch ("UTMB"), Texas Board of Criminal Justice ("TBCJ"), Bryan Collier ("Collier"), Lannette Linthicum ("Linthicum"), Michael Britt ("Britt"), Audrey England ("England"), Donald Muniz ("Muniz"), Daniel Dickerson ("Dickerson"), Jerry Sanchez ("Sanchez"), Owen Murray ("Murray"), Austine Aigbokhan ("Aigbokhan"), Mahaghony Walker ("Walker"), and Gene Miller ("Miller") (collectively, "Defendants") file this response to Plaintiffs' motion to compel (D.E. 51) ("MTC").

### I.  STATEMENT OF THE CASE

Plaintiffs are the purported heirs and representatives of four former inmates— Jon Southards, Elizabeth Hagerty, John Skinner, and John Castillo, (together, the "Decedents")—who died in TDCJ custody.  Both individually and on the Decedents' behalf, Plaintiffs filed this lawsuit alleging that TDCJ, UTMB, TBCJ (together, the "Agency Defendants"), and eleven TDCJ and UTMB officials— Collier, Linthicum, Britt, England, Muniz, Dickerson, Sanchez, Murray, Aigbokhan, Walker, and Miller (together, the "Individual Defendants")—exposed Decedents to excessive heat in their prison units during the summer of 2023, causing their deaths.  D.E. 28.  Plaintiffs bring claims for damages under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").  *Id.*  The Individual Defendants have asserted the defense of qualified immunity.  D.E. 31.

1

After Plaintiffs served more than *2,000* discovery requests seeking millions of documents going back to 1998, Defendants filed a motion for protective order seeking to limit discovery to what is necessary to Defendants' knowledge and conduct as it relates to Decedents and the circumstances of their deaths in 2023.  D.E. 44 ("MPO").  One of the goals of Defendants' MPO was to get an early ruling on the appropriate scope of discovery, thereby avoiding potentially unnecessary squabbles over individual requests.  In the interim, Defendants have produced more than 33,000 pages of documents, including all of the Individual Defendants' emails concerning the Decedents and the vast majority of records related to the Decedents' conditions, medical treatment, and death.

The Court set a hearing for July 24, 2026 to resolve Defendants' MTC, along with Defendants' motion to sever and transfer (D.E. 33), the result of which may also significantly impact the scope of discovery.  D.E. 47.  Less than two weeks before the hearing, Plaintiffs filed their MTC seeking specific categories of documents; to wit, (1) *all* documents concerning *all* prior heat-related injuries reported to the Individual Defendants; (2) *all* inmate grievance records concerning heat; (3) the Individual Defendants' disciplinary files; and (4); videos of the Decedents' housing areas before their deaths. D.E. 51 at 1-2.  Plaintiffs' MTC raises precisely the type of discrete disputes Defendants' MPO was meant to preempt, but alas Plaintiffs insisted on filing it before a broader ruling on the appropriate scope of discovery.  As described below, Plaintiffs' request for video is moot, and the remainder of their MTC should be denied or limited for the reasons already outlined in Defendants' pending MPO.

### III.  ARGUMENT

#### A.    Plaintiffs' request for video is moot.

TDCJ's Office of Inspector General ("OIG") reports on Decedents' deaths referenced that video footage had been reviewed.  On June 17, 2026, OIG provided Defendants' counsel all such footage in their possession, custody, or control, along with the reminder of OIG investigatory files. These videos and other files are currently being uploaded and produced to Plaintiffs.  Defendants are

aware of no other video footage of the Decedents' housing areas other than the video footage being produced. Thus, Plaintiff's MTC is moot to the extent it seeks videos related to the Decedents' deaths.

### B.    Plaintiffs' remaining requests go beyond the scope of permissible discovery.

In addition to the already-produced videos from the Decedents' housing areas, Plaintiffs' MTC seeks to compel production of *all* documents related to heat-related injuries and deaths, *all* heat-related grievance records, and Defendants' *entire* disciplinary records. D.E. 51. Defendants did not object to these requests wholesale; rather, they agreed to produce a subset of each category. With respect to prior heat-related incidents, Defendants agreed to produce reports of heat-related injuries and deaths at the Decedents' units of assignment for from 2021-2023. *See* D.E. 51-3 at 232-33, 281-82; D.E. 51-4 at 173, 174, and 212. With respect to grievances, Defendants agreed to produce the Decedents' grievances from 2021 through their deaths. D.E. 51-3 at 320; D.E. 51-4 at 255. Finally, with respect to Defendants' disciplinary records, Defendants agreed to produce any portion of those records which pertained to Decedents or heat-related injuries or deaths. D.E. 51-3 at 222-31; D.E. 51-4 at 172.

For the same reasons described in Defendants' MPO (D.E. 44), the Court should uphold Defendants' objections to all three categories of documents and deny Plaintiff's motion to compel.

### 1.    Qualified immunity substantially limits the scope of discovery.

"Qualified immunity is an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). "[O]ne of the most important benefits of the qualified immunity defense is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Asante-Chioke v. Dowdle*, 103 F.4th 1126, 1129 (5th Cir. 2024) (quotation omitted). Thus, once a defendant has asserted qualified immunity, discovery must be "narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507–08 (5th Cir. 1987)). A court's "failure to limit discovery [is] tantamount to the denial of qualified immunity." *Asante-Chioke* 103 F.4th at 1131.

3

In wrongful death cases against law enforcement officials, the Fifth Circuit has made clear that district courts must limit discovery to what is necessary to ascertain the officials' qualified immunity. *See*, *e.g.*, *id.* at 1131-32 (remanding and directing the district court to limit discovery in officer shooting case to uncover only the facts necessary to rule on qualified immunity). And specifically where, as here, the case involves an inmate's allegedly heat-related death, the Fifth Circuit has held that discovery on qualified immunity is properly limited to "the personal knowledge and personal conduct of each Defendant as it relates to [the deceased inmate] and the circumstances leading to his death." *Hinojosa v. Livingston*, 807 F.3d 657, 672 (5th Cir. 2015).

> For example, in *Webb v. Livingston*, the Eastern District limited discovery as follows:
>
> Plaintiff is entitled to obtain discovery limited to the personal knowledge and personal conduct of the Defendants as it relates to the [inmate's] case and the circumstances leading to his death at the Hodge Unit. That may include their knowledge of extreme temperatures at the Hodge Unit; the effect of psychotropic drugs on a prisoner's ability to regulate high temperatures, specifically, Mr. Webb's ability to do so; and what medical advice the Defendants received or gave regarding the Hodge Unit, Mr. Webb and management of extreme temperatures as it relates to this case. That may include discovery as to any policies or procedures in place (including TDCJ system-wide policies or procedures) to deal with the extreme high heat conditions at the Hodge Unit and whether those policies or procedures, if any, were followed in this case. The discovery shall be designed to uncover evidence that may be used to overcome (or to enforce) Defendants' defense of qualified immunity in the Webb case. **Although the Amended Complaint includes allegations of conditions throughout the TDCJ system and relates injury or death due to high heat in several other cases, this is not a class action nor have the cases been consolidated; the causes of action it propounds involve the death of Mr. Webb and the circumstances at the Hodge Unit, not the circumstances at other units**.

No. 6:13-CV-711, 2014 WL 1049983, at *9 (E.D. Tex. Mar. 17, 2014) (emphasis added). Applying this limitation, the court in *Webb* prohibited, among other things, "broad discovery related to TDCJ-wide prison units" and "other heat-related cases filed in this and other federal districts in Texas." *Id.* at *9. The Fifth Circuit affirmed, noting that "the district court's discovery order [was] narrowly tailored to uncover only the facts necessary to rule on the immunity defense" because it "prevent[ed] discovery that pertained to the merits of [plaintiffs] underlying claims and excluded discovery relevant

to other heat-related litigation." 618 F. Appx. 201, 201-11 (5th Cir. 2015).

Here, as in *Webb* and *Hinojosa*, the only relevant question for determining the Individual Defendants' qualified immunity is their personal knowledge and conduct as it relates to the deaths of the Decedents.  None of the additional documents Plaintiffs seek in their MTC are directly pertinent to this question.   To the extent the Individual Defendants' knowledge of heat-related conditions is relevant to determining qualified immunity,[1] what matters is their knowledge of heat conditions at the Decedents' units in the year (or two years, at most) before they died, not what was going on at other units or in the distant past.  Similarly, heat-related grievances at other units or from prior summers has no bearing on the Individual Defendants' knowledge of the specific risk posed to the Decedents.  Finally, there is no viable argument that Defendants' disciplinary records—which include no reference of the Decedents or heat-related incidents—is relevant to the qualified immunity analysis.

### 2.    Plaintiff's remaining requests are overly broad and unduly burdensome.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Moreover, discovery requests cannot seek information or documents that are "obtain[able] from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). "The objective [of these rules] is to guard against redundant or disproportionate discovery" and "to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 Adv. Comm. Note.

---

[1] If none of the Decedents' deaths were directly caused by heat exposure, as Defendants expect to prove, then heat-related illnesses and deaths of *any* other inmates would be irrelevant to qualified immunity.

This case is not a class action, and Plaintiffs do not seek any injunctive or other broad sweeping relief. D.E. 28. Indeed, as the purported heirs and representatives of inmates who died in custody, Plaintiffs can *only* recover damages under the Texas Survival Statute or Texas Wrongful Death Statute, both of which require a causal connection between the violation and the Decedents' injuries or death. *See Montano v. Orange Cty., Tex.*, 842 F.3d 865, 879-80, 882 (5th Cir. 2016); *Slade v. City of Marshall*, 814 F.3d 263, 264 (5th Cir. 2016).; Tex. Civ. Prac. & Rem. Code §§ 71.002(b), 71.021(b).

The only relevant question in assessing Plaintiffs' Eighth Amendment claims is whether the Decedents were exposed to an extreme risk to their health or safety and, if so, whether any of the Individual Defendants were "deliberately indifferent" to that specific risk. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *Gates v. Cook*, 376 F.3d 323, 339 (2004). And with respect to Plaintiffs' ADA/RA claims, the only relevant question is whether the Agency Defendants intentionally discriminated against the Decedents by failing reasonably accommodate their disabilities. *Windham v. Harris Cty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017); *Delano-Pyle v. Victoria County Texas*, 302 F.3d 567 (5th Cir. 2002) (holding that monetary damages under the ADA/RA requires intentionality).

Plaintiffs' sweeping requests for *all* heat-related injury reports, *all* heat-related grievances, and Defendants' entire disciplinary files fail under the proportionality test of Rule 26(b). To show that all heat-related incident reports are important, Plaintiffs point to several *Monell* liability cases. D.E. 51 at 7. These cases are inapposite. Because Plaintiffs do not sue a city or municipality, they do not need to establish a "policy or custom" of persistent wrongdoing to establish a constitutional violation, and thus they do not need nearly the same scope of records. *See Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010). With respect to grievances, whether inmates across all TDCJ units complained about heat is not important in determining whether Defendants were deliberately indifferent to the Decedents' specific conditions or intentionally discriminated against them on the basis of their specific disabilities. Similarly, the fact that Defendants may have been disciplined for conduct not related to

6

heat or the Decedents' conditions is unimportant to these questions.

Another one of the factors in the 26(b) proportionality analysis is the parties' relative access to relevant information. Plaintiffs' counsel also represent parties in *Tiede v. Collier*, No. 1:23-cv-1004, (W.D. Tex.), a massive litigation challenging Texas prison heat conditions in which TDCJ has produced millions of documents, many of which overlap with the documents sought in this case. Indeed, Plaintiffs admit that their counsel "have access to significant information" and are "are in the unenviable position of asking Defendants to produce back to them documents [their] own attorneys already have or had, but may be prohibited from using in this case" D.E. 51 5-6. But Plaintiffs are not prohibited from using the information their counsel obtained in *Tiede*, as TDCJ has already agreed that documents produced in that case can be used here provided only that the original confidentiality designations are honored. Plaintiffs should be required to review the documents already in their possession before asking Defendants to re-search their records at great expense.

Relatedly, there is the issue of undue burden, which is especially pertinent to Plaintiffs' requests for heat-related grievances. As explained in the affidavit of Tyra Phillips, more than 15,000 step one grievances were filed between 2021-2023, all of which would need to be manually reviewed because they are sorted by inmate and unit, not nature of complaint asserted. D.E. 45-65. Requiring such manual review would be disproportionate to the needs of the case, especially given that Plaintiffs already have all of the Decedents' grievance records from the years before they died.

Although courts have "broad discretion" in deciding discovery matters—*see Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011)—this is not even a close call. Under the proportionality requirements of Rule 26, Plaintiffs' requests for Defendants' entire disciplinary files and *all* heat-related incident and grievance records are plainly overbroad and unduly burdensome. *See, e.g.*, *Rogge v. Bandera Falls Prop. Owner's Ass'n*, No. CV SA-07-CA-996, 2009 WL 10713559, at *2 (W.D. Tex. Aug. 11, 2009) ("[A] large portion of plaintiff's requests are over broad. This lawsuit was filed on

June 5, 2007, based on actions purportedly commencing in 2005. Thus, it is unclear how documents from 2002 or 2003, and in some instances 2004, would be relevant."); *Ford v. Cain*, No. CV 15-136, 2016 WL 7471633, at \*5 (M.D. La. Dec. 27, 2016) (holding that inmate could not request all grievances concerning inmate healthcare because his claim related solely to his own healthcare); *Fund Tex. Choice v. Deski*, No. 1:22-CV-859-RP, 2023 WL 8856052, at \*15 (W.D. Tex. Dec. 21, 2023) (Pitman, J.) (finding unduly burdensome 1,691 discovery requests because responding to that many requests "would impose substantial costs on any party"); *Johnson v. Cnty. of Dallas*, No. CIV.A. 3:92-CV1121-P, 1997 WL 711448, at \*1 (N.D. Tex. Nov. 12, 1997) (finding unduly burdensome request for four years' worth of inmate grievances); *Grant v. Lafourche Par.*, No. CV 21-1782, 2022 WL 4104546, at \*1 (E.D. La. Sept. 8, 2022) (finding unduly burdensome request for records of other inmates' sick calls and grievances); *Lafleur v. Leglue*, No. CV 16-254-BAJ-RLB, 2018 WL 3420808, at \*3 (M.D. La. July 13, 2018) (finding unduly burdensome request for four years' worth of prison use of force records).

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to compel.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Teas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**BRIANA M. WEBB**
Chief, Law Enforcement Defense Division

*/s/ Michael J. Calb*

**MICHAEL J. CALB**
Assistant Attorney General
Attorney-In-Charge
Texas State Bar No. 24126986
Michael.Calb@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I, Michael J. Calb, Assistant Attorney General, affirm that on July 21, 2026 a true copy of the foregoing has been served on all counsel of record via the Court's electronic filing system.

/s/ *Michael J.Calb*
**MICHAEL J. CALB**
Assistant Attorney General