**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| TONA SOUTHARDS-NARANJO, ET AL., | § § § | |
| **Plaintiffs,** | § | |
| V. | § § | **A-25-CV-990-RP** |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, ET AL., | § § § | |
| **Defendants.** | § § § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court are Defendants' Motion to Sever and Transfer Venue (Dkt. 33) and Plaintiffs' Response in Opposition (Dkt. 39).[1] The court heard arguments on this motion as well as two pending discovery motions—Defendants' Motion for Protective Order Limiting Discovery (Dkt. 44) and Plaintiffs' Motion to Compel (Dkt. 51)—at a hearing on July 24, 2026. After reviewing the pleadings and the relevant case law, and having held a hearing, the undersigned submits the following Report and Recommendation to the District Court. The undersigned will issue a separate order on the discovery motions.

## I.    BACKGROUND

This case arises from the deaths of four inmates allegedly due to the extreme heat inside their Texas state prison cells in four different prisons in 2023. Doc. 28 (Third Amd. Compl. or TAC). Plaintiffs are the inmates' survivors. Plaintiffs filed this lawsuit alleging that TDCJ, UTMB,

---

[1] The motion was referred by United States District Judge Robert Pitman to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Text Order dated April 24, 2026.

TBCJ (together, the "Agency Defendants"), and eleven TDCJ and UTMB officials—Collier, Linthicum, Britt, England, Muniz, Dickerson, Sanchez, Murray, Aigbokhan, Walker, and Miller (together, the "Individual Defendants")—were responsible for the Decedents' deaths.

Collier was the TDJC Executive Director. TAC ¶ 21. Linthicum was TDCJ's chief medical officer, and supervised and assisted in providing medical care to prisoners at all TDCJ facilities. TAC ¶ 22. Murray was the chief physician executive for UTMB's correctional managed care program and oversaw the medical, mental health, and dental services provided to prisoners within more than 100 correctional facilities in Texas, including the units where the Decedents died. TAC ¶ 28.

Dickerson was the Regional Director for TDCJ Region I, supervising the Wainwright Unit and the Estelle Unit when Mr. Southards and Mr. Skinner died. TAC ¶ 26. Sanchez was the Regional Director for TDCJ Region VI supervising the Lane Murray Unit when Ms. Hagerty died as well as the Hughes Unit when Mr. Castillo died. TAC ¶ 27.

Britt was the warden at the Estelle Unit when Mr. Southards died. TAC ¶ 23. Aigbokhan was the correctional officer assigned to patrol Mr. Southards' housing area. TAC ¶ 29. Aigbokhan patrolled Mr. Southards' assigned housing area shortly before he was found unresponsive, but was relieved from patrolling that area by the time Mr. Southards was found unresponsive. TAC ¶ 29.

England was the warden at the Lane Murray Unit when Ms. Hagerty died. TAC ¶ 24.

Muniz was the warden at the Wainwright Unit when Mr. Skinner died. TAC ¶ 25. Walker was a correctional officer assigned to patrol Mr. Skinner's housing area during the shift when Officer Walker found Mr. Skinner unresponsive. TAC ¶ 30.

Finally, Miller was the senior warden at the Hughes Unit when Mr. Castillo died. TAC ¶ 31.

Plaintiffs assert multiple Eighth and Fourteenth Amendment claims under § 1983 against Defendants Collier, Linthicum, Murray, Britt, England, Muniz, Dickerson, Miller, Sanchez, Aigbokhan, and Walker and assert Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) claims against UTMB, TDCJ, and TBCJ. TAC.

Defendants move to sever Plaintiffs' case into four cases by Decedent and transfer each case to the Division or District where the death occurred. Dkt. 33. Plaintiffs oppose the motion. Dkt. 39. Defendants did not file a reply brief to support their motion or rebut any of Plaintiffs' arguments. The court will first address severance, then transfer.

## II.    SEVERANCE

### A.    Applicable Law

District courts have broad discretion when deciding a motion to sever. *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000). The relevant rules are Federal Rules of Civil Procedure 20 and 21. *See Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) ("Since Rule 21 does not provide any standards by which district courts can determine if parties are misjoined, courts have looked to Rule 20 for guidance."). Rule 21 states: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." FED. R. CIV. P. 21. Rule 20 addresses the joinder of plaintiffs, and states:

> Persons may join in one action as plaintiffs if:
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all plaintiffs will arise in the action.

FED. R. CIV. P. 20(a)(1). Generally, courts consider the following factors when evaluating a motion to sever under Federal Rule of Civil Procedure 21: "(1) whether the claims arise out of the same

3

transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Def. Distributed v. Bruck*, 30 F.4th 414, 431 (5th Cir. 2022). District courts liberally construe permissive joinder of claims and parties in the interest of judicial economy. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."); *Acevedo*, 600 F.3d at 521 (quoting *Gibbs*, 383 U.S. at 715). The movant "bear[s] the burden in seeking severance under Rule 21." *Universal Connectivity Techs. Inc. v. Dell Techs. Inc.*, No. 1:23-CV-1506-RP, 2024 WL 5159910, at *3 (W.D. Tex. Dec. 12, 2024).

**B.     Analysis**

Defendants argue that each of the five factors favor severance. Plaintiffs disagree.

1.     <u>Same Transaction or Occurrence</u>

Defendants argue Plaintiffs' claims arise from four difference occurrences because the Decedents died on different dates, in different prison units, under the supervision of different unit-level Defendants, and under difference circumstances. Plaintiffs argue the case arises out of the same transaction—TDCJ, TBCJ, UTMB, Collier, Linthicum, and Murray's longstanding policy and practice of forcibly housing inmates in non-air-conditioned spaces to endure Texas's extreme heat every summer, including inmates with known medical and mental health vulnerabilities to extreme heat, despite knowing that to do so would kill inmates and had repeatedly done so in prior years.

4

Transactions or occurrences are the "same" under Rule 20 if there is "some connection or logical relationship between the various transactions or occurrences." *Garner v. Travis Cnty. Emergency Servs. Dist. No. 1*, No. 1:25-CV-736-RP, 2025 WL 3252326, at *11 (W.D. Tex. Oct. 29, 2025) (citing *MyMail, Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455, 456 (E.D. Tex. 2004)). The "logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise" to each cause of action. *Universal Connectivity Techs.*, 2024 WL 5159910, at *4 (citing *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012)).

The undersigned agrees with Plaintiffs. These deaths are not unrelated. They were all allegedly caused by the same policies and practices employed by the Agency Defendants, Collier, Linthicum, and Murray for years, if not decades.

### 2. Common Questions of Law or Fact

Defendants argue that determining whether the Individual Defendants violated the Eighth Amendment, the ADA, or the RA will require considering the distinct conditions experienced by the Decedents, the Individual Defendants' subjective beliefs with respect to those distinct conditions, each of the Decedents' specific medical conditions, and the specific accommodations granted or denied to each of the Decedents. Defendants acknowledge that some questions apply to all Decedents—*i.e.,* whether heat policies were enacted with deliberate indifference—but argue those issue are insufficient to override the Decedent-specific questions. Plaintiffs argue common questions of fact and law abound in this case, including proving the Decedents were subjected to a dangerous condition of confinement that was so widespread and so obvious that state-wide agencies and leaders were deliberately indifferent and intentionally discriminated against the Decedents. Plaintiffs also argue that—even where the occurrences are unique—there will be considerable commonality of fact and law, including causation questions, which will require the

same expertise to unravel, and correctional practice questions, which will require the same expertise to place in context, and whether the danger from extreme heat was clearly established for the correctional officer-level Defendants.

Again, the undersigned agrees with Plaintiffs. Plaintiffs allege it was Defendants' policies and practices that led to the Decedents' deaths. Moreover, Plaintiffs allege each Decedent was prescribed an anticholinergic medication that increased their sensitivity to heat but that medication was not accounted for in their heat scores. TAC ¶ 135. The undersigned acknowledges there will be some Decedent-specific and some Defendant-specific determinations that will need to be made, but this case clearly presents common questions of law and fact.

3.    Evidence

Defendants argue different witnesses and documentary proof will be required as to each Decedent, as each of the four deaths took place at different units, at different times, and under different circumstances. Defendants assert that almost all of the relevant documents—*i.e.,* medical, housing, and autopsy records—will be unique to each Decedent. Defendants also argue that the severed Defendants in each of the four severed cases can easily coordinate to prevent discovery duplication. Plaintiffs argue that most of the evidence in the case will be common amongst all of the Plaintiffs and most of the Defendants. Plaintiffs further point out that much of the common evidence will also apply to the wardens and regional director Defendants because they are apprised of state-wide policies, complaints, serious injuries, and litigation their knowledge would largely arise through communications from their state-level leadership. Dkt. 39 at 16.

The undersigned agrees that much, if not most, of the evidence and witnesses will be common to all four cases. Moreover, Defendants overstate the likelihood of coordinated discovery. The pending discovery motions have demonstrated the parties' difficulties of coordinating

discovery from past cases. The court has little reason to believe the parties will be able to effectively coordinate discovery among simultaneous, ongoing cases. Moreover, while depositions could likely be coordinated among the cases, most witnesses would be forced to testify at four trials instead of one. This factor does not support severance.

### 4.    Judicial Economy

Defendants argue that judicial economy favors severance because TDCJ and UTMB, which would pay for or indemnify any potential settlement, will only agree to a settlement that disposes of the entire case and not one that disposes of certain claims within a case. Plaintiffs argue it would be supremely wasteful to sever and transfer this case, requiring multiple courts to engage in the work of one. Plaintiffs point out that the liability case against TDCJ, UTMB, TBCJ, Collier, Linthicum, and Murray is the same for all four Decedents and Defendants' motion risks creating constitutional uncertainty by demanding that up to three different federal courts contemplate the constitutional liability of the same six defendants for the same state-wide policy decisions at the same time.

Again, the court agrees with Plaintiffs. It would waste judicial resources to require multiple courts to decide duplicative discovery motions, expert motions, and summary judgment motions and to preside over multiple trials where the same issues are being tried. Defendants' stated refusal to settle a case in parts is entirely their own decision. The court will not make decisions to accommodate Defendants' preferred settlement practices.

### 5.    Prejudice

Finally, Defendants argue that if all four Decedents go to trial together, it will be difficult for the jury to separate the claims and assess the evidence for each independently and "it will be nearly impossible to avoid creating the impression that this is some type of class action seeking

7

redress for *all* allegedly heat-related deaths." Dkt. 33 at 5. Plaintiffs argue there would be no unfair prejudice and "Defendants' only asserted prejudices are illusory or even downright false." Dkt. 39 at 13.

The undersigned has a much greater faith than Defendants in the court's ability to craft jury instructions and a verdict form that will mitigate the prejudice Defendants assert. The undersigned also has a much greater faith than Defendants in a jury's ability to follow those instructions. Moreover, severance and transfer is not the only way to alleviate any such prejudice. Judge Pitman is an experienced jurist, and the undersigned has no doubt he can devise a trial process that lessens any risk of prejudice.

### 6. Conclusion

Defendants bear the burden in seeking severance under Rule 21. *See Universal Connectivity Techs. Inc.*, 2024 WL 5159910, at *3. They have failed to meet that burden here. Accordingly, the undersigned will not recommend that the case be severed by Decedent.

## III. TRANSFER

### A. Applicable Law

Under Section 1404(a), a suit may be transferred for convenience to another venue where it might have been brought. 28 U.S.C. § 1404(a). Determining whether transfer under Section 1404 is proper requires the court to determine two factors: (1) that the transferee district is one where suit "might have been brought" and (2) that the transferee district is clearly more convenient. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008).

To evaluate convenience, the court considers four public and private interest factors. *Id*. at 315. "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance

for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id*. at 315 (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*")). "The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Id*. (quoting *Volkswagen I*, 371 F.3d at 203).

### B.    Analysis

No one disputes that venue is proper in the Austin Division or in any of the potential transferee Divisions. The great majority of Defendants' transfer arguments presume the court will grant severance. *See* Dkt. 33 at 5-13. Nonetheless, Defendants use one paragraph to contend transfer is appropriate even if the court does not sever the cases. Dkt. 33 at 13-14. Defendants argue transfer is still appropriate because none of the Plaintiffs or Individual Defendants reside in the Austin Division, it would be inconvenient for most witnesses to attend trial in Austin, and an Austin jury has no local interest in the outcome of the litigation. Defendants assert that the Waco Division would probably be the most convenient as two of the four deaths occurred there. Alternatively, Defendants argue the Eastern District's Lufkin Division or the Southern District's Houston Division would be more convenient than Austin because at least one of the four deaths occurred in those venues.

The undersigned disagrees. Weighing the factors, no transferee venue is clearly more convenient than Austin. One of the Defendants is located in Austin, and significant evidence is located in Austin as significant relevant events occurred before this court, in the Texas Legislature, and in the TBCJ.

9

As all venues are in Texas, they each share equal subpoena power for trial. *See* FED. R. CIV. P. 45(c).

Austin is the most centrally located venue compared to the transferee venues. Moving the case to Houston would be more convenient for the Huntsville, Houston, Galveston, and Lufkin witnesses but at the expense of the Austin and Gatesville witnesses. Waco would similarly impose inconvenience on Austin witnesses for the benefit of Gatesville witnesses, as well as removing the option to fly or bus from Houston to Austin while adding the complication of requiring out-of-state voluntary witnesses to fly into Austin anyway, only to drive to Waco.

Practically, this court is familiar with the many of the issues in this case as it is presiding over the *Tiede* litigation. Similarly, this court is also familiar with the relevant law.

Defendants argue Austin does not have a particularized interest in this case as none of the Decedents were Austinites. But, Austinites, like all Texans, do have an interest in the safety of their state's prisons and the policy and practices that govern them. Similar to all Texas populations, many Austinites have family members and friends incarcerated in Texas prisons.

Accordingly, in the absence of severance, Defendants have not shown that any transferee district is clearly more convenient. *See In re Volkswagen*, 545 F.3d at 315 ("when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected"). Accordingly, the undersigned will recommend the motion be denied as to Defendants' transfer request.

## IV.    RECOMMENDATIONS

For the reasons stated above, the undersigned **RECOMMENDS** that the District Judge **DENY** Defendants' Motion to Sever and Transfer Venue (Dkt. 33).

## V.    OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED July 27, 2026.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE