IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TONA SOUTHARDS-NARANJO, ET AL., | § § § | |
| Plaintiffs, | § | |
| V. | § § | A-25-CV-990-RP |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, ET AL., | § § § | |
| Defendants. | § | |

**ORDER**

Before the court are Defendants' Motion for Protective Order Limiting Discovery (Dkt. 44) and Plaintiffs' Response in Opposition (Dkt. 46-2), as well as Plaintiffs' Motion to Compel (Dkt. 51), Defendants' Response (Dkt. 55), and Plaintiffs' Reply (Dkt. 56).[1] The court heard arguments on these motions as well as Defendants' Motion to Sever and Transfer Venue (Dkt. 33) at a hearing on July 24, 2026.

## I.    BACKGROUND

This case arises from the deaths of four inmates allegedly due to the extreme heat inside their Texas state prison cells in four different prisons in 2023. Doc. 28 (Third Amd. Compl. or TAC). Plaintiffs are the inmates' survivors. Plaintiffs filed this lawsuit alleging that TDCJ, UTMB, TBCJ (together, the "Agency Defendants"), and eleven TDCJ and UTMB officials—Collier, Linthicum, Britt, England, Muniz, Dickerson, Sanchez, Murray, Aigbokhan, Walker, and Miller (together, the "Individual Defendants")—were responsible for the Decedents' deaths.

---

[1] The motions were referred by United States District Judge Robert Pitman to the undersigned for disposition pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Text Orders dated May 7, 2026, and July 16, 2026.

1

Collier was the TDJC Executive Director. TAC ¶ 21. Linthicum was TDCJ's chief medical officer, and supervised and assisted in providing medical care to prisoners at all TDCJ facilities. TAC ¶ 22. Murray was the chief physician executive for UTMB's correctional managed care program and oversaw the medical, mental health, and dental services provided to prisoners within more than 100 correctional facilities in Texas, including the units where the Decedents died. TAC ¶ 28.

Dickerson was the Regional Director for TDCJ Region I, supervising the Wainwright Unit and the Estelle Unit when Mr. Southards and Mr. Skinner died. TAC ¶ 26. Sanchez was the Regional Director for TDCJ Region VI supervising the Lane Murray Unit when Ms. Hagerty died as well as the Hughes Unit when Mr. Castillo died. TAC ¶ 27.

Britt was the warden at the Estelle Unit when Mr. Southards died. TAC ¶ 23. Aigbokhan was the correctional officer assigned to patrol Mr. Southards' housing area. TAC ¶ 29. Aigbokhan patrolled Mr. Southards' assigned housing area shortly before he was found unresponsive, but was relieved from patrolling that area by the time Mr. Southards was found unresponsive. TAC ¶ 29.

England was the warden at the Lane Murray Unit when Ms. Hagerty died. TAC ¶ 24.

Muniz was the warden at the Wainwright Unit when Mr. Skinner died. TAC ¶ 25. Walker was a correctional officer assigned to patrol Mr. Skinner's housing area during the shift when Officer Walker found Mr. Skinner unresponsive. TAC ¶ 30.

Finally, Miller was the senior warden at the Hughes Unit when Mr. Castillo died. TAC ¶ 31.

Plaintiffs assert multiple Eighth and Fourteenth Amendment claims under § 1983 against Defendants Collier, Linthicum, Murray, Britt, England, Muniz, Dickerson, Miller, Sanchez, Aigbokhan, and Walker and assert Americans with Disabilities Act (ADA) and Rehabilitation Act

(RA) claims against UTMB, TDCJ, and TBCJ. TAC. In their Answer, "Defendants assert their right to all applicable immunities, including but not limited to sovereign immunity, official immunity, and qualified immunity." Dkt. 31 at 34. No motion to dismiss has been filed.

Defendants move for a protective order to limit discovery sought by Plaintiffs. Dkt. 44. Plaintiffs oppose this motion. Additionally, Plaintiffs move to compel discovery from Defendants, Dkt. 51, which Defendants oppose. Dkt. 55.

## II.    APPLICABLE LAW

Rule 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Proportionality depends on six factors: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*.

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition, made applicable to the States through the Fourteenth Amendment, "does not mandate comfortable prisons, but neither does it permit inhumane ones." *Hinojosa v. Livingston*, 807 F.3d 657, 664–65 (5th Cir. 2015) (citing *Ball v. LeBlanc,* 792 F.3d 584, 592 (5th Cir. 2015)). To plead an Eighth Amendment violation based on the conditions of an inmate's confinement, a plaintiff must allege conditions that "pose a substantial risk of serious harm." *Id*. (citation modified).

The plaintiff must also allege that the defendant prison officials were deliberately indifferent to the inmate's health or safety. *Id*. This requires more than an allegation of mere negligence, but less than an allegation of purpose or knowledge. *Id*. Rather, a prison official acts

with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

Whether a risk is substantial and the threatened harm is serious represents an objective test; whether prison officials consciously disregarded the risk represents a subjective one. *Id*. Furthermore, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. For instance, "if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Id*.

The Fifth Circuit has repeatedly held that exposing an inmate to extreme cell temperatures can constitute cruel and unusual punishment. *Id*. (citing cases going back to 1977). "To prove unconstitutional prison conditions, inmates need not show that death or serious injury has already occurred. They need only show that there is a substantial risk of serious harm." *Id.* (citation modified).

"A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Hinojosa*, 807 F.3d at 669. A government official's conduct violates clearly established law when, at the time

of the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (citation modified). Fifth Circuit precedent clearly establishes that the Eighth Amendment guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures. *Id.* In light of this precedent, a prison official acts unreasonably when he, either directly or through his policy, subjects an inmate to extremely dangerous temperatures without adequate remedial measures in conscious disregard of the risk posed by those temperatures. *Id.*

## III.    DEFENDANTS' MOTION FOR PROTECTION

Defendants seek to drastically limit discovery in this case until qualified immunity is resolved. However, Defendants have not moved to dismiss any claim against them on the basis of qualified immunity. Defendants seek to limit any discovery in this case geographically to the prison units where Decedents died and temporally to two years before their deaths. To support their motion, Defendants rely on cases limiting discovery in light of motions to dismiss on qualified immunity. But again, here there are no such motions.

As Plaintiffs point out, there is no explanation for why Defendants' previous knowledge would suddenly become irrelevant at two years before Decedents' deaths. Rather than try to compromise on discrete discovery issues, Defendants seek all or nothing relief. Defendants have not shown they are entitled to such drastic limitations on discovery. Accordingly, their motion is **DENIED**.

Nonetheless, the court acknowledges that the amount of discovery Plaintiffs have sought is staggering on its face. Plaintiffs argue this discovery is necessary in light of what their counsel, who have litigated other heat-related prison deaths against some of these same Defendants, have learned from other cases and in light of Defendants' unwillingness to concede any point of fact,

5

including those that policy makers have conceded in prior cases. Furthermore, there is not complete agreement on what discovery from prior cases Plaintiffs may use in this case. Thus, to some extent, the amount of discovery sought by Plaintiffs is within Defendants' own control.

Although the court is denying Defendants' motion, the court is sensitive to Defendants' arguments concerning the burden that lenient geographic and temporal limitations will place on Defendants, especially with respect to proportionality considerations. The court encourages both sides to be reasonable in their discovery negotiations.

## IV.    PLAINTIFFS' MOTION TO COMPEL

In their motion, Plaintiffs do not seek to compel the full gambit of discovery they have requested from Defendants. Instead, their sought discovery is categorized into four groupings.

### 1.    RFPs to TDCJ numbered 232, 233, 281, and 282 and RFPs to UTMB numbered 173, 174, 212, and 212—Prior Heat-Related Injuries

In these requests, Plaintiffs seek: all documents received by or sent by any Individual Defendant concerning the heatstroke death of any TDCJ inmate and any offsite medical transport of any TDCJ inmate concerning heat-related illness; all weekly summaries of incidents, illnesses, and/or work orders for the four units from January 1, 2013 to present; and all monthly executive summaries of incidents, illnesses, and/or work orders for the four units from January 1, 2013 to present. Consistent with their Motion for Protection, Defendants agreed to produce documents from the four prison units where Decedents died between 2021-2023.

For the reasons stated in the hearing, the court grants the requests in part and **ORDERS** Defendants to produce all heat stroke and hospitalization reports that the Individual Defendants sent or received.

### 2. RFP 320 to TDCJ and RPF 255 to UTMB—Inmate Grievances Related to Heat or any Named Defendant

Plaintiffs acknowledge that this would include over 15,000 grievances. Defendants would agree to produce the Decedents' grievances from 2021 to the time of their deaths.

For the reasons stated in the hearing, the court grants the requests in part and **ORDERS** Defendants to produce all heat grievances from the four units for last 10 years. The court further clarifies that the grievances themselves must be produced, a summary or table will not suffice. The court further **ORDERS** Defendants to produce a table or summary of all heat grievances across the state for the last 10 years.

### 3. RFPs 222–231 to TDCJ and 172 to UTMB—Individual Defendants' Disciplinary Files

Defendants argue they have reviewed the files and they contain nothing related to Decedents or heat issues. The court **ORDERS** Defendants to produce the entire disciplinary files for Defendants Britt, Aigbokhan, Muniz, Walker, England, and Miller.

### 4. RFPs 29–32, 35, 82–85, 88, 135–138, 141, 186–189, and 192 to TDCJ and 29–33, 69–73, 109–113, and 149–153 to UTMB—Videos of each Decedent and Their Housing Area Immediately Before Their Death

At the hearing, Plaintiffs informed the court that they had received many videos, but Defendants had not withdrawn their objections. Thus, Plaintiffs were unsure if they had received all of the requested videos. The court **OVERRULES** Defendants' objections.

## V. CONCLUSION

The court is impressed by the attorneys from both sides, and both sides are reasonably and capably represented. Now that the undersigned has made a recommendation on Defendants' motion to sever and transfer, the court is optimistic the parties can reasonably work together to resolve their disputes with the guidance given here and by Rule 26. If any part of this order is

7

unclear, the court hopes they will reasonably negotiate a resolution. If they cannot, or if they cannot resolve their future disputes, they may file a motion.

For the reasons stated above and given at the hearing, the undersigned **DENIES** Defendants' Motion for Protective Order Limiting Discovery (Dkt. 44) and **GRANTS in part and DENIES in part** Plaintiffs' Motion to Compel (Dkt. 51)

SIGNED July 27, 2026.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE